[Civ. No. 14148. Second Dist., Div. Three. May 26, 1944.]

HARRY A. LORD, Appellant, v. RAY R. INGELS, as Director of the Motor Vehicle Department etc., et al., Respondents.

Warren E. Libby for Appellant.

Robert W. Kenny, Attorney General, and Frank Richards, Deputy Attorney General, for Respondents.

BISHOP, J. pro tem.— Plaintiff's appeal from the order dismissing his action because it had not been brought to trial within five years after its birth, is mainly based upon the proposition that there is a fund *in custodia legis* whose disposition was made dependent upon the determination of a constitutional question, and until the question is decided and the fund disbursed the court cannot rid itself of the action. We find no circumstance in this case exempting it from the mandatory provisions of section 583, Code of Civil Procedure, which direct the dismissal of an action not brought to trial within five years after it is "filed."

Plaintiff, engaged in the year 1937 in the caravaning of automobiles into this state from states which are eastern to us, sought by this action to enjoin the defendants, who were officers of the State Motor Vehicle Department, from enforcing those provisions of a new statute (Stats. 1937, p. 2253; Deering's Gen. Laws, 1937, Act 5136) which imposed fees totaling $15 upon each car driven upon the state highways over the route followed by plaintiff in his operations. The temporary restraining order which was issued upon the filing of the complaint was supplanted, in due course, by a preliminary injunction, granted upon the giving of a bond in the sum of $2,000, which ordered the defendants not to enforce the statute. The number of cars caravaned was so great that within a very short time the protection given the state by the $2,000 bond was gone, and a new arrangement was entered into. There first was a stipulation in which it was recited that, measured by the statute which the plaintiff was defying, the fees and penalties owed by the plaintiff already totalled $5,152.50, of which amount the sum of $3,152 had been paid to the Motor Vehicle Department. It was further stipulated, and then ordered, that the preliminary injunction be dissolved and the $2,000 bond released from all liability. However, the defendants were again forbidden to enforce

against the plaintiff any of the provisions of the statute. He, in turn, was directed to pay to the Motor Vehicle Department $15 for each car which he caravaned on the state highways, within the purview of the statute. The order then continued in these words: "all sums which are so paid and the sum of $3,152.50 heretofore paid to said Motor Vehicle Department of the State of California as recited and receipted for in said Stipulation of December 17, 1937, shall be retained by said Department of Motor Vehicles in a special fund pending the final determination in this action on appeal or otherwise of the constitutionality of the aforesaid Statute, at which time in the event that the said Statute shall be determined to be unconstitutional the sums so paid shall be returned upon application to the plaintiff herein by the defendants, or their successors in office, and in the event that the said Statute shall be determined to be constitutional the said sums so paid shall be retained by the Department of Motor Vehicles and shall be applied according to the provisions of said Chapter 788 of the California Statutes of 1937.

"It Is Hereby Further Ordered that this Court specifically reserves continuing jurisdiction until final disposition of said moneys as aforesaid to make orders in regard to such final disposition and particularly to make such Order as is meet and proper in the event that such Statute is finally held to be partially valid and partially invalid."

We have already noted plaintiff's position. "Having created this special trust fund *in custodia legis* in lieu of bond for temporary injunction," he states, "the trial court must determine the constitutionality of the statute and decree a disposition of the fund before it dismisses the action and terminates and surrenders all its jurisdiction over the fund created in this case." Later he adds: "The appellant is still insistent upon the Court determining the constitutionality of Chapter 788, Statutes of 1937." That the statute in question is constitutional, so far as the federal Constitution is concerned, has been determined in *Clark* v. *Gray* (1939), 306 U.S. 583 [59 S.Ct. 744, 83 L.Ed. 1001], but apparently the plaintiff wants the state court to pass upon his contentions.

We do not interpret the order, which followed quite meticulously the wording of the stipulation upon which it was based, as intending to create a departure from the rule prevailing in this state that no court undertakes to determine

the constitutionality of a statute as an abstract question, but only when called upon to do so in order to enforce or protect the rights of a party to a pending action. The establishing of this fund in the Motor Vehicle Department was an incident to, not the object of, this action. The object of the action was to protect the plaintiff from the burden and embarrassment that would follow from the enforcement of a statute which he claimed had no validity because it violated both the federal and state Constitutions. A final judgment, granting or denying a permanent injunction was contemplated when the stipulation was entered into and the order made providing a substitute arrangement for the bond usually required. A determination of the constitutionality of the statute could be anticipated only as a step in arriving at the judgment. There would be no occasion for the court to pass upon the validity of those provisions of the statute which did not affect the plaintiff, and if his allegation, denied by the defendants in their answer, that the fees which the defendants were threatening to collect on cars not owned by the plaintiff but which he was caravaning, would have to be paid out of his pocket, and not by the cars' owners, was not found to be true, plaintiff would appear not to be affected by the burden of the statute and so in no position to question its constitutionality.

If, however, the stipulation and subsequent order be interpreted as an acknowledgment that plaintiff did have an interest in the constitutionality of the statute, so that, at least for the purposes of an order disbursing the fund, no proof of his interest would be necessary, even so there remained issues of fact which had to be determined before plaintiff's contentions that the statute was unconstitutional could be disposed of. In his complaint he lists some eighteen reasons why the statute clashes with the state and federal Constitutions. Among other reasons advanced are these: "That the charges and fees required of the plaintiff under said statute are arbitrary, unreasonable and excessive in amount, and bear no reasonable relation to the plaintiff's use of the highways of the State of California. . . . That said tax and charge is wholly disproportionate to other taxes, fees or other licenses charged by the State of California, either for the registration of vehicles in said state of for vehicles using the highways in said state; . . . That said tax and

charge is exorbitant and arbitrary and unfair to such a degree that the interstate business in which plaintiff is engaged in the State of California will return a revenue to the said state in proportion far in excess of other fees, licenses or taxes charged other persons for the use of the highways of said state." It is obvious that none of these objections can be ruled upon from a mere reading of the statute; defendants' denial of all the allegations of the paragraph in which these objections were listed raised issues of fact which made proof necessary before the trial court could be in a position to pass upon the constitutional questions involved.

This is not a case, therefore, such as was *Martin* v. *Gibson* (1941), 48 Cal.App.2d 449 [119 P.2d 1012], where there was no issue of fact, so that no "trial" could be had. Here there were issues of fact; the court could not determine the legal issues involved until the factual issues were tried; there was no trial within five years of the filing of the complaint. No excuse for failing to bring the action to trial has been offered. No reason appears why it could not have been tried during any of the five years while it was pending. The suggestion that the stipulation which preceded the order may be interpreted as a stipulation of the parties that the time within which the action may be brought to trial was extended, does not survive a reading of the stipulation; the "continuing jurisdiction" was plainly to enable the court to make orders disposing of the fund after it had exhausted its ordinary jurisdiction by entering a judgment, not to postpone indefinitely the time within which a trial, looking to a judgment, might be begun. The lament of the plaintiff that the dismissal of this action relegates him to the necessity of bringing another action has its echo in every case dismissed for failure of prosecution.

The action, on the face of the record, was one which section 583, Code of Civil Procedure, says must be dismissed. "The statute," this court said in *Bank of America* v. *Moore & Harrah* (1942), 54 Cal.App.2d 37, 43 [128 P.2d 623], referring to section 583, "has the very salutary purpose of expediting trials. Its language is clear and definite and the integrity of its meaning has generally been upheld by the courts in a plenitude of decisions. In the several legislative amendments to which it has been subjected the Legislature has not seen fit to temper the rigor of the language or its forthright construction and

support by the courts; the tendency, rather, has been to extend and make more certain its operation."

We see no reason to doubt the correctness of the order appealed from; it is affirmed.

Desmond, P. J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 24, 1944. Shenk, J., and Carter, J., voted for a hearing.