Filed 10/26/23  Perzow v. Accolade CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| MICHAEL PERZOW,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ACCOLADE, INC., et al.,<br><br>    Defendants and Respondents. | B325121<br><br>(Los Angeles County<br>Super. Ct. No. 22STCV02911) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Reversed with directions.

—————————

King & Spalding, K. Luan Tran, Eric S. Pettit, Joseph N. Akrotirianakis, Jeanne A. Fugate and Samuel C. Cortina for Plaintiff and Appellant.

Greenberg Glusker Fields Claman & Machtinger, Ricardo P. Cestero and Jillian A. Berk for Defendants and Respondents Accolade, Inc. and MD Insider, Inc.

Through the instant appeal, plaintiff and appellant Michael Perzow challenges the trial court's order sustaining the demurrer of defendants and respondents Accolade, Inc. (Accolade) and MD Insider, Inc. (MDI) (collectively, defendants) on the sole basis that "[t]here [was] another action pending between the same parties on the same cause of action" (Code Civ. Proc., § 430.10, subd. (c) [basis for sustaining demurrer])[1] and staying the instant lawsuit pending resolution of that other action.[2] (See § 597.)

We conclude that the instant lawsuit and the other action on which the court based its ruling do not involve "the same cause[s] of action," and thus that the trial court erred in staying the instant action. We further conclude it is outside the scope of this appeal to consider, as potential alternative bases for the trial court's order, the defendants' demurrer arguments that the operative complaint fails to state a viable claim for relief.

Accordingly, we reverse.

## FACTUAL BACKGROUND

### A. *Alleged Partnership and Business Venture*

In reviewing a court's ruling on a demurrer, we accept as true all well-pleaded factual allegations. (*Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 395.) Therefore, the background in this

---

[1] All subsequent statutory references are to the Code of Civil Procedure.

[2] Perzow's notice of appeal identifies a "[m]inute order abating and staying the action in its entirety pending the final determination of another action, appealable under . . . [section] 597." Such an order is statutorily deemed an appealable interlocutory judgment. (See § 597 [appealable interlocutory judgment "shall be entered" following order sustaining demurrer under section 430.10, subdivision (c)].)

2

section derives from the allegations in the operative complaint in the instant litigation:

In late 2010, Perzow and his business partner, nonparty Jay Calvert, "agreed to be 50/50 partners in a joint venture [(the partnership)] to develop and exploit [a] doctor/patient matching search engine and proprietary rating system," as well as "all business lines and businesses stemming from the venture." In 2011, Perzow and Calvert formed MDI for the sole purpose of operating the "website/search engine component of their broader venture" using their search engine and matching/scoring system. "Perzow and Calvert each had [a] 50 [percent] interest in MDI shares." They agreed "MDI would not own the rights to [the underlying] technology but could rather use it for the specific purpose of operating MDI's website/search engine for consumers," and that "Calvert and Perzow, and not MDI, each continued to co-own the rights and interests in the technology . . . and would be able to control the use of that technology on behalf of their venture, including MDI's use of it." (Capitalization omitted.) The same was true of all other assets of MDI, including " 'all of their [Calvert and Perzow's] business plans, projects, technology, designs, concepts, ideas, codes, software, domain names, intellectual property or intangible property related to, affiliated with, pertaining to, or associated with [MDI].' "

In March 2017, Perzow suggested incorporating a subscription-based, live-person medical concierge concept into MDI's business plan, rather than a self-service search website. He and Calvert agreed, however, "to restrict MDI to the search website and to pursue the medical concierge idea later outside of MDI," meaning the men would "keep [the medical concierge concept] for themselves—rather than including it in the MDI entity."

3

In 2011, Calvert and Perzow executed a "release agreement" in which Perzow agreed to "sell, release, and convey to Calvert all of Perzow's rights to MDI," as well as "all claims 'arising out of or relating to . . . [MDI] and the technology, and any other agreement or transaction' between [Perzow and Calvert]."  (Capitalization omitted.)

## B.    *The 2014 Action*

On March 3, 2014, Perzow sued MDI, Jay Calvert and others (the 2014 action)[3] seeking rescission of the 2011 release agreement, which he alleged would "restor[e] . . . [Perzow's] [50] percent . . . ownership interest in [MDI]," as well as declaratory relief regarding Perzow's ownership interest in "[MDI] and all related intellectual property and technology."  The complaint alleged that Calvert procured Perzow's assent to the 2011 release agreement by fraud, and then gave the intellectual property used by MDI to Calvert Enterprises, Inc.

Perzow and Calvert settled the 2014 lawsuit on terms that included (1) rescission of the 2011 release agreement; (2) transfer of 8 million shares of MDI from Calvert to Perzow; and (3) a broad mutual general release of known and unknown claims.  The parties placed the settlement agreement on the record pursuant to section 664.6, and following a successful motion to enforce it, the court entered a judgment "in favor of . . . Perzow [and] against . . . Calvert, Calvert Enterprises, Inc. and [MDI]" that incorporated the settlement terms.

---

[3] We hereby grant respondents' request that we take judicial notice of the records of the 2014 action and the 2018 action (discussed below).  We hereby deny Perzow's request that we take judicial notice of an order regarding attorney fees entered on July 5, 2023 in the 2018 action.

## C.  *The 2018 Action*

In 2018, Perzow and the partnership (through Perzow) sued MDI, alleging that, without compensating the partnership or Perzow in any way, MDI was "us[ing] and exploit[ing]" what the complaint referred to as "the formula and methodology for 'scoring' physicians."  The complaint defined this "formula and methodology" by incorporating by reference the definition of the technology at issue in the 2011 release agreement—namely, " 'all of [Calvert and Perzow's] business plans, projects, technology, designs, concepts, ideas, codes, software, domain names, intellectual property or intangible property related to, affiliated with, pertaining to, or associated with [MDI].' "

The complaint alleged MDI filed multiple patent applications regarding the subject formula and methodology that identified only Calvert—not Perzow—as a coinventor, and that MDI "licens[ed] [the formula and technology] to others and/or [sold] access to physician ratings derived from [the] formula and methodology" "without compensating [the partnership] or Perzow in any way." Based on this alleged conduct, Perzow and the partnership asserted causes of action for unfair business practices, misappropriation of trade secrets, unjust enrichment, unfair competition, and declaratory relief.  They sought damages, restitution, injunctive relief, and a declaratory judgment confirming the partnership's exclusive ownership of the formula and methodology and "similar formulas and methodologies derived therefrom or based thereupon."

The court sustained a demurrer to all of Perzow's claims asserted in the complaint on the basis that the release from the 2014 action settlement—to which Perzow, but not the partnership, was a party—barred Perzow from pursuing any of the claims in the 2018 action.  The court then granted MDI's motion for judgment on the pleadings without leave to amend as to the remaining claims of

5

the partnership on the basis that they were time-barred.  The court entered judgment in favor of MDI and Calvert and against Perzow and the partnership.  The partnership and Perzow appealed.

### D. *The 2022 Action*

While the appeal from the 2018 action was pending, Perzow filed a third lawsuit (the 2022 action or the instant action), which gave rise to the instant appeal.  The operative complaint therein alleges that Perzow still partially owns MDI and the related intellectual property he and Calvert developed.  The complaint alleges that MDI and Accolade violated these ownership rights when, in 2019, Accolade acquired MDI and related intellectual property without seeking Perzow's authorization and without compensating him.  It further alleges that, around July 2020, Accolade used the data and technology it obtained through this acquisition " 'to launch [a] doctor-picking concierge' " without compensating or seeking authorization from Perzow, despite Perzow holding 50 percent of "the exclusive right to develop and co-own the medical concierge/live person concept using the technology [powering MDI]."  (Capitalization omitted.)

On these bases, the 2022 action alleged causes of action against Accolade for tortious interference with contractual relations, tortious interference with prospective economic relations, unfair competition, unjust enrichment, conversion, breach of fiduciary duty, and declaratory relief, as well as causes of action against MDI for breach of contract and breach of fiduciary duty.  Perzow sought damages, injunctive relief, and a declaratory judgment regarding his ownership interest in the technology at issue, including the medical concierge business concept.

6

### E. *Demurrer Ruling in the 2022 Action*

Defendants demurred to the operative complaint in the 2022 action, raising six arguments as to why it failed to state a viable cause of action. The demurrer did not explicitly request abatement of the lawsuit pursuant to section 430.10, subdivision (c), but did note that "an interlocutory judgment in favor of defendants abating [the] 2022 action until the conclusion of the [2018] action," would be the "proper remedy" "[b]ecause the [2018] action [was] technically still pending[,]" and, once final, would have res judicata effect on the 2022 action. (Capitalization omitted.)

The court ruled on the demurrer as follows: "The demurrer . . . is sustained. The present action . . . is abated pending the appeal in the [(2018 action)] becoming final. The court hereby stays the case in its entirety." (Capitalization omitted.) The court did not rule on any other issues defendants raised in their demurrer.[4] Perzow timely appealed.[5]

---

[4] Specifically, the court did not rule on any of the following arguments defendants raised: (1) the 2014 action bars the instant action; (2) Perzow's claims were barred by the release contained in the 2014 action settlement; (3) Perzow was judicially estopped from claiming ownership of the technology given contrary allegations in the 2018 action; (4) the statute of frauds barred Perzow's claims; and (5) Perzow's claims were time-barred.

[5] The judgment from the 2018 action and related appeals finally concluded while the instant appeal was pending. Based on this postappeal development, Perzow requested dismissal of the instant appeal as moot. We denied the motion. As we discuss below, because the tests for abatement and claim preclusion are the same, a ruling that the pendency of the 2018 action justified abatement is also a ruling that, after the stay is lifted, the judgment in the 2018 action will have claim preclusive effect on the instant action. (See *Lord v. Garland* (1946) 27 Cal.2d 840, 851 (*Lord*) ["[i]f a judgment upon the merits is rendered in the suit first commenced,

## DISCUSSION

### A. *The Court Erred in Abating the Instant Action Based on the Pendency of the 2018 Action*

A defendant "may object, by demurrer or answer" (§ 430.10) to a complaint filed against it on the grounds that "[t]here is another action pending between the same parties on the same cause of action." (§ 430.10, subd. (c).) This "permit[s] the trial court to retain jurisdiction over the subsequent action so that when a final determination is had in the prior pending action the court will be empowered to determine the issues in the subsequent suit." (*Lord, supra,* 27 Cal.2d at p. 851; see § 597.)

On appeal, Perzow argues the court erred in sustaining the demurrer on the basis of a plea in abatement pursuant to section 430.10, subdivision (c), and that this court should reverse the resulting order staying the action, which section 597 deems to be an appealable interlocutory judgment. (See § 597 [upon sustaining a demurrer based solely on section 430.10, subdivision (c), the court "shall" enter an appealable interlocutory

---

the party asserting the plea in abatement should be granted leave to amend to plead the res judicata effect of the judgment in bar of the subsequent action"]; *id.* at p. 848 [abatement only proper under section 430.10 when a final judgment in the prior action would have claim preclusive effect in the current action].) Thus, our review of the abatement ruling can still grant Perzow effective relief, even though the stay imposed by the order on appeal is, by its own terms, no longer in effect now that the 2018 action finally concluded. We thus review only whether the court properly abated the action under section 430.10, not whether the court could have stayed or can in the future stay the action as an exercise of its general discretion in the interest of judicial efficiency. A stay under section 430.10 may affect the resolution of the dispute, but a stay under general jurisdiction does not.

judgment in defendant's favor staying the action].)  Our review is de novo.  (See, e.g., *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)

Abating an action under section 430.10, subdivision (c) is proper only if the judgment in the prior action would create a res judicata bar to prosecution of the claims in the abated action. (*Lord, supra*, 27 Cal.2d at p. 848 ["a plea in abatement may be maintained only where the claim sued upon in the second action is such that a final judgment in the first one could be pleaded in bar as a former adjudication"].)  A plea in abatement and claim preclusion are thus two sides of the same coin, and the same requirements must be met in order for either to apply.  (See *Crowley v. Katleman* (1994) 8 Cal.4th 666, 682; *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 904 (*Mycogen*).)  These requirements are that " '(1) [a] claim . . . raised in the present action is identical to a claim . . . litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding.  [Citations.]' [Citation.]" (*People v. Barragan* (2004) 32 Cal.4th 236, 253.)  We need not consider whether all of these requirements are satisfied here, because the second requirement—that the causes of action in the two proceedings be the same—is dispositive and requires reversal.

We assess the sameness of causes of action for the purposes of res judicata or section 430.10, subdivision (c) based on the facts alleged in the two complaints at issue.  (*Bush v. Superior Court* (1992) 10 Cal.App.4th 1374, 1384 (*Bush*).)  In so doing, we apply " 'the primary right theory' " under which " 'a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act

by the defendant constituting a breach of that duty. [Citation.]' " (*Mycogen, supra*, 28 Cal.4th at p. 904; *Colebrook v. CIT Bank, N.A.* (2021) 64 Cal.App.5th 259, 263.) " 'As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered' " (*Mycogen, supra*, at p. 904), and "[a]n injury is defined in part by reference to the set of facts, or transaction, from which the injury arose." (*Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1203.)

Even assuming, without deciding, that the 2018 and 2022 complaints allege the exact same ownership and intellectual property rights—a subject of disagreement in the parties' briefing— the two actions still involve disparate " 'wrongful action[s] by the defendant[s]' " violating those rights (*Mycogen, supra*, 28 Cal.4th at p. 904), and thus do not assert the same causes of action. (See *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1199 ["each new breach of such an obligation provides all the elements of a claim—wrongdoing, harm, and causation [citation]— each may be treated as an independently actionable wrong"].) Specifically, in the 2018 action, the wrongful acts alleged are the filing of patent applications and use of the subject intellectual property at various points prior to 2018. The wrongful acts alleged in the 2022 action, by contrast, are the sale of MDI and the subject intellectual property to Accolade in 2019, as well as Accolade's pursuit of the medical concierge business concept in 2020. Thus, the wrongful actions the 2022 complaint alleges injured Perzow are distinct from the wrongful, injury-producing actions alleged in the 2018 action. It is also significant that the wrongful acts alleged in the 2022 action postdate the 2018 action, because "the rule of res judicata extends only to the facts and conditions as they existed at the time the judgment was rendered, or more correctly speaking,

at the time the issues in the first action were made. . . . When other facts or conditions intervene before the second suit, furnishing a new basis for the claims and defenses of the respective parties, the issues are no longer the same and the former judgment cannot be pleaded in bar of the second action." (*Lord, supra*, 27 Cal.2d at p. 849; see *Pitts v. City of Sacramento* (2006) 138 Cal.App.4th 853, 857 [because the cause of action in the latter case "relie[d] on acts . . . postdating the ruling in the prior case[,] . . . the trial court erred . . . in sustaining a demurrer on the basis of a plea in abatement"].) Thus, the 2018 and 2022 actions do not involve the same primary rights, the causes of action in the two proceedings are not the same, and the 2018 action cannot have res judicata effect on the 2022 action. Accordingly, we conclude the court erred in abating the 2022 action based on the pendency of the 2018 action under sections 430.10, subdivision (c) and 597.

In arguing to the contrary, defendants characterize the actions as both involving "the allegedly unauthorized use of [the same] intellectual property." "Defendants' contentions suffer from over-generalization" and "confuse the category of conduct with the specific . . . wrong [allegedly] done to [Perzow]." (*E. & J. Gallo Winery v. Encana Energy Services, Inc.* (E.D.Cal. 2005) 388 F.Supp.2d 1148, 1158 [applying California law].) Assuming (again, solely for the purposes of argument) that the intellectual property at issue in the two actions is identical, the fact that one can generally categorize both actions as based on the unauthorized use of those rights "substitutes the label for the behavior for the operative facts that constitute the behavior and implies that the facts are the same because the labels are the same." (*Ibid.*) That Perzow had sought redress when these rights were allegedly infringed upon prior to 2018 does not bar him from seeking redress

11

if and when, as the 2022 complaint alleges occurred, different actions infringed upon those rights again years later.

### B. *We May Not Affirm on the Other Bases Identified in Defendants' Demurrer*

Finally, defendants argue that, even if abatement was not proper, we can and should affirm the challenged order on the alternative basis that the operative complaint fails to state a viable claim for relief for the reasons laid out in defendants' demurrer. In so arguing, defendants cite authority for the proposition that "[a] judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.) This principle is inapplicable because the court did not dismiss the action. Nor are arguments that a complaint fails to state a legally viable claim bases on which to *stay* a case. (See *Lawyers Title Ins. Corp. v. Superior Court* (1984) 151 Cal.App.3d 455, 459 [" '[a] plea in abatement is essentially a request—not that an action be terminated—but that it be continued until such time as there has been a disposition of the first action' "].)

Accordingly, we reverse the court's order concluding the 2018 and 2022 actions involve the same cause of action and abating the instant action. For the sake of clarity, we note that, upon remand, the court remains free to consider any arguments regarding the other issues raised in the defendants' demurrer as to the merits of the claims, and to consider the issue preclusive effect of prior judgments, a topic we do not address in the instant opinion. Any ruling that relies on the 2018 action being res judicata in the instant action, however, would be inconsistent with this opinion.

12

## DISPOSITION

The order on defendants' demurrer is reversed.  The trial court is instructed to issue a new order consistent with this opinion, and conduct further proceedings consistent with this opinion.  Perzow is awarded his costs on appeal.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

BENDIX, J.

13